IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHINELO O. OPARAECHE, | ) |
| Plaintiff, | ) |
| v. | ) No. 12 CV 1586 |
| | ) Magistrate Judge Sidney I. Schenkier |
| RALPH REDDY and JOHN VERIHA, | ) |
| TRUCKING, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On November 28, 2012, the parties in this personal injury case reached a settlement, and this Court entered a dismissal without prejudice and with leave to seek reinstatement by December 31, 2012 to enforce the settlement and to adjudicate liens (doc. # 51). From the filing of this lawsuit in state court in February 2012 through the settlement in this Court in November 2012, the plaintiff, Chinelo O. Oparaeche, has been represented by Mark Solmor of Friedman and Solmor, Ltd. (doc. ## 1, 34). On December 5, 2012, plaintiff timely filed this motion to reinstate for the purpose of adjudicating the attorney's fees claim of 'Lanre O. Amu, an attorney who had initially represented Ms. Oparaeche in certain matters involving the accident that ultimately gave rise to this suit (doc. # 52: Combined Motion to Reinstate and Adjudicate Claim of Attorney's Fees ("Pl.'s Br.")).[1]

---

[1] On March 28, 2012, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 19, 21). On February 6, 2013, Mr. Amu also consented for the limited purpose of resolution of his attorney's fee (doc. # 66).

In response, on January 8, 2013, Mr. Amu filed a "Motion Complaining of Lack of Personal Jurisdiction over Non-Party Lanre Amu" and "Lanre Amu's Position on Attorney Fees" (docs. ## 55-57). But on January 9, 2013, Mr. Amu filed a "Motion Withdrawing Complaint for Lack of Personal Jurisdiction and Filed Lanre Amu's Position on Attorney's Fees and Replacing with Amu's Response to Motion to Adjudicate Attorney's Fees and Replacing with Amu's Response to Motion to Adjudicate Fees" and "Attorney 'Lanre O. Amu's Concise Response to Motion to Adjudicate Claim of Attorney's Fees" (docs. ## 59-62). In his response to plaintiff's motion, Mr. Amu contends that he is entitled to a portion of the attorney's fees due to Friedman and Solmor from the settlement award in this case to compensate him for the work he performed on the plaintiff's behalf in the first few months after her injury.[2]

We grant the plaintiff's motion to reinstate, grant Mr. Amu's motion to withdraw the "Motion Complaining of Lack of Personal Jurisdiction over Non-Party Lanre Amu" and the filing entitled, "Lanre Amu's Position on Attorney's Fees" (docs. ## 55-57), and address the issue of Mr. Amu's attorney's fee. For the reasons set forth below, we award Mr. Amu $7,000.00 in attorney's fees in *quantum meruit*.

I.

On January 30, 2011, Ms. Oparaeche was injured when her car, which was stopped at a tollbooth, was rear-ended by a semi-tractor trailer (doc. # 39). On January 31, 2011, she hired 'Lanre

---

[2] Neither the plaintiff nor Mr. Amu has provided evidence of Mr. Amu's lien. Because the plaintiff has filed this motion seeking a fee determination and has not argued that Mr. Amu did not comply with the statutory requirements to effectuate his lien, we find that the plaintiff has waived any argument that the lien is legally ineffective.

2

O. Amu to represent her and entered a contingency fee agreement, which provided that Mr. Amu would be entitled to one-third of any recovery as his legal fee (doc. # 59, Ex.1: Chronological Affidavit). Around the beginning of June 2011, Ms. Oparaeche notified Mr. Amu that she no longer wished to have him represent her (Pl.'s Br. at 1; doc. # 62 at 1).[3] In that same time frame, she retained Friedman and Solmor to represent her (doc. # 63 at Ex. A). In Mr. Amu's affidavit detailing the work he performed during the months he represented the plaintiff, he lists requesting ambulance records, emailing an adjuster regarding the property damage to her car, meeting with the plaintiff to execute the property damage release, and sending the release and the property damage settlement draft to the adjuster (doc. # 59, Ex. 1 at 1-2). In addition, Mr. Amu says that he referred the plaintiff for medical and dental treatment (doc. # 59 at 1).

Mr. Amu contends that he became aware by early May that the plaintiff was likely to terminate his services, so he "began to find reasonable means to document the value of my services at that point. I began to tally the medical records and bills to make an interim demand on the personal injury aspect having concluded the property damage aspect of the case previously" (doc. # 59, Ex. 1 at 2). On May 25, 2011, Mr. Amu sent a demand letter to the adjuster seeking $109,490.00 to settle based on the medical bills up to that date (*Id.*).

---

[3] The parties disagree over the precise date that Ms. Oparaeche dismissed Mr. Amu. Ms. Oparaeche contends that she terminated his representation of her on May 27, 2011 (Pl.'s Br. at 1). Mr. Amu asserts that he received the termination letter on June 1, 2011 (doc. # 62 at 1). We find no need to resolve this quibble in light of our more general analysis of the work Mr. Amu performed.

3

After Friedman and Solmor took over the representation, they filed a complaint in the Circuit Court of Cook County on February 7, 2012, for negligence and willful and wanton misconduct against the truck driver and the trucking company (doc. # 1). The complaint alleged that the truck driver was drunk at the time of the accident (*Id.*). In March 2012, the defendants removed the case to federal district court (*Id.*).

Once in federal court, Friedman and Solmor responded to interrogatories, dealt with a motion for a protective order, took six depositions, amended the complaint to add punitive damages, and participated in settlement negotiations, which yielded a settlement of $262,500.00 (*see* doc. # 52, Ex. A at 4; doc. # 59 at 5).

## II.

Although not challenged here, we begin by noting that we have supplemental jurisdiction to adjudicate the issue of Mr. Amu's attorney lien. Supplemental jurisdiction extends to suits over attorney's fees for work in underlying litigation that is already within the court's jurisdiction. *See Matthews v. Homecomings Financial Network, Inc.*, 264 Fed. App'x 536, 537-38 (7th Cir. 2008); *Abbott Labs. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002); *Rissman v. Rissman*, 229 F.3d 586, 587-88 (7th Cir. 2000); *Clarion Corp. v. Am. Home Prods. Corp.*, 464 F.2d 444, 445 (7th Cir. 1972) (specific to liens asserted in Illinois). Our jurisdiction secure, we turn to the merits.

Under Illinois law, trial judges have broad discretion in matters of attorney's fees due to the advantage of their close observation of the attorney's work and the trial judge's deeper understanding

of the skill and time required in the case. *Will v. Northwestern Univ.*, 881 N.E.2d 481, 505 (Ill. App. Ct. 2007); *see also Mirabel v. Gen. Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978). When a client terminates an attorney working under a contingency fee contract, the contract ceases to exist and the contingency term, whether or not the client prevails, is no longer operative. *Wegner v. Arnold*, 713 N.E.2d 247, 250 (1999); *In re Estate of Callahan*, 578 N.E.2d 985, 988 (Ill. 1991). However, a discharged attorney is entitled to be paid a reasonable fee on a *quantum meruit* basis for those services rendered prior to discharge. *Will*, 881 N.E.2d at 504; *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 975 (Ill. 1979). Under this theory, a trial court literally awards the attorney, as the term indicates, "as much as he deserves." *Wegner*, 713 N.E.2d at 250 (quoting *Kannewurf v. Johns*, 632 N.E.2d 711, 717 (Ill. App. Ct. 1994)).

The burden of proof is on the attorney to establish the value of his services, but the trial court "'may also use the knowledge it has acquired in the discharge of professional duties to value legal services rendered.'" *Patterson v. Burge*, No. 03 C 4433, 2008 WL 4875791, at *3 (N.D. Ill. Aug. 4, 2008) (quoting *Johns v. Klecan*, 556 N.E.2d 689, 695 (Ill. App. Ct. 1990)). In determining the reasonable value of an attorney's services, "the court should consider the services performed, the time expended thereon, the attorney's hourly rate, the skill and standing of the attorney, the nature of the case, the difficulty of the issues involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, and the benefit resulting to the client." *Anderson v. Anchor Org. For Health Maintenance*, 654 N.E. 2d 675, 681-82 (Ill. App. Ct. 1995); *see also Matthews*, 264 Fed. App'x at 539. When an attorney who has done substantial work on a case is fired on the eve of settlement, the factors involved in determining a

reasonable fee "would justify a finding that the entire contract fee is the reasonable value of services rendered." *Will*, 881 N.E.2d at 505 (citing *Wegner*, 713 N.E.2d at 251).

### III.

Mr. Amu contends that the case was all but finished when Friedman and Solmor came on the scene:

> The case concerned only the nature and extent of injury when it left the Law Office of 'Lanre O. Amu and went to Friedmand [sic] and Solmor. Liability issues had been resolved; property damage had been resolved and paid for; the medical documentation were in place; the medical treatment was in place all through the law office of 'Lanre O. Amu. There was nothing more for Friedmand [sic] and Solmor to do than supplement the remaining treatment records and bills.

(doc. # 59 at 4). Mr. Amu argues that the reasoning of *Will* and *Wegner* would justify an award of his full contract fee. Consequently, he proposes three options for his award of fees: 1) $52,500, which he contends is 50 percent of Friedman and Solmor's fee award; 2) $42,000, which he says is 40 percent of the Friedman and Solmor fee; or 3) $36,496.66, which is one-third of the damage demand he sent the adjuster in June 2011 (doc. # 59 at 5).[4]

Because he adheres to his conviction that he is entitled to something tantamount to his contingency fee, Mr. Amu rebuffed Friedman and Solmor's request to provide an accounting of the hours he expended or what he charges as his hourly rate: "There is no basis for asking how much hours 'Lanre O. Amu has worked on the case. At that time the case left Amu's office, there was nothing in dispute other than finalizing the nature and extent of her damages. The bulk of the work had been done" (doc. # 59 at 2).

---

[4] The settlement amount was $262,500. Mr. Amu assumes that Friedman and Solmor's contingency fee agreement was 40 percent of the settlement amount. Plaintiff's briefs do not reveal the actual fee arrangement between the plaintiff and Friedman and Solmor. For purposes of this motion, we find no need to question Mr. Amu's assumption as it does not affect the outcome of our decision.

In addition, Mr. Amu argues that because Friedman and Solmor receive one-third of the recovery amount before a lawsuit is filed and forty-percent after filing, the firm had incentive to file a lawsuit to increase their compensation. He contends that "[t]here is no indication that this case would not have settled for the same sum without a lawsuit being filed" (doc. # 59 at 2). We disagree. As Mr. Amu points out, liability in this case was a slam dunk: "[t]his is a rear end auto accident case. Liability was not in dispute" (*Id.* at 1). Collecting compensation for the damage to Ms. Oparaeche's car in a case where liability was obvious neither took hours of labor nor demanded a high degree of legal expertise.

On the other hand, the more challenging issue of damages remained. As Mr. Amu asserts, "[t]he case concerned only the nature and extent of injury when it left" his office (doc. # 59 at 4). That part of the case, however, was not as easily resolved. Friedman and Solmor researched the facts and the law and prepared and filed a complaint against two defendants in state court, who then removed the case to federal court (doc. #1). Friedman and Solmor participated in discovery, amended the complaint to add a punitive damages claim, and participated in settlement negotiations. The case ultimately settled – nearly a year and a half *after* Mr. Amu was discharged. The efforts of Friedman and Solmor clearly enhanced the value of the case and increased the amount the plaintiff was able to recover. Mr. Amu's initial demand of $109,490.00, which was only a starting point and presumably would have been negotiated down if a settlement had been reached by Mr. Amu in 2011, was far less than the $262,500.00 settlement achieved through the efforts of Friedman and Solmor. We say "if" Mr. Amu had been able to achieve a settlement, because there is no evidence that the defendants were ready and willing to come to the settlement table at that point in time. They never responded to Mr. Amu's demand. There is no doubt that the difference between Mr. Amu's demand

and the final settlement amount is the result of significant legal and factual development by Friedman and Solmar. Hence, we reject Mr. Amu's position that he had all but completed the case. As a result, we see no basis to award Mr. Amu his full contractual contingency fee – or anything close to it.

That leaves Mr. Amu with an award based on *quantum meruit*. It is up to the Court to ascertain what he deserves. *Wegner,* 713 N.E.2d at 250. Turning to the factors for determining the reasonable value of an attorney's services, we consider the services performed, the time expended, the attorney's hourly rate, the skill and standing of the attorney, the nature of the case, the difficulty of the issues involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, and the benefit resulting to the client. *Anderson,* 654 N.E. 2d at 681-82 (Ill. App. Ct. 1995); *see also Matthews,* 264 Fed. App'x at 539.

Mr. Amu has provided no timesheets, no hourly rate, and no evidence of his skill and standing as an attorney. But in his affidavit, Mr. Amu did provide a list of tasks he performed during his brief representation of the plaintiff (doc. # 59).[5] The sending and receiving emails and executing a property damage release (for which we assume he has already been paid) require little time or skill. It appears that Mr. Amu was doing little more than collecting bills, adding them up, and submitting them to the insurer. Certainly, we do not expect that it took much effort to persuade the insurer to pay for property damage incurred in a rear-end collision caused by an intoxicated truck driver.

---

[5] Though the affidavit lists tasks he performed after June 1, 2011, we do not consider those in determining his fee. We deem his representation terminated by June 1, 2011, at the latest.

Based on our understanding of the tasks he performed and the amount of time these tasks would normally take, we find an award of $7,000.00 is reasonable and sufficient to compensate him for his legal work.

## CONCLUSION

For all foregoing reasons, plaintiff's Combined Motion to Reinstate and Adjudicate Claim of Attorney's Fees is granted. We award Mr. Amu attorney's fees in the amount of $7,000.00. The case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: February 11, 2013**